(No. 38745.—

ROCK ISLAND AUCTION SALES, INC., Appellee, *vs.* EMPIRE PACKING CO., 'INC., *et al.*—(ILLINOIS NATIONAL BANK AND TRUST COMPANY OF ROCKFORD, ILLINOIS, Appellant.)

*Opinion filed January 21, 1965.—Rehearing denied March 17, 1965.*

CHAPMAN AND CUTLER, of Chicago, (JOHN B. HUCK, RALPH F. HUCK, and ROSCOE C. NASH, of counsel,) for appellant.

OAKLEAF & CHURCHILL, of Moline, (CYRUS CHURCHILL, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This case presents issues concerning the construction and validity of section 4—302 of the Uniform Commercial Code. Ill. Rev. Stat. 1963, chap. 26, par. 4—302.

The facts were admitted or stipulated. On Monday, September 24, 1962, the plaintiff, Rock Island Auction Sales, Inc., sold 61 head of cattle to Empire Packing Co., Inc. and received therefor Empire's check in the sum of $14,706.90. The check was dated September 24, 1962, and on that day the plaintiff deposited it in the First Bank and Trust Company of Davenport, Iowa. It was received by the payor bank, Illinois National Bank and Trust Company of Rockford, Illinois, on Thursday, September 27, 1962. Empire's balance was inadequate to pay the check, but the payor bank, relying upon Empire's assurances that additional funds would be deposited, held the check until Tuesday morning, October 2, 1962. It then marked the check "not sufficient funds", placed it in the mail for return to the Federal Reserve Bank of Chicago and sent notice of dishonor by telegram to the Federal Reserve Bank. The depositary bank, the First Trust and Savings Bank of Davenport, received the check on October 4, 1962. The check was never paid. On November 7, 1962, bankruptcy proceedings were instituted against Empire and on December 13, 1962, it was adjudicated a bankrupt.

On February 15, 1963, the plaintiff instituted this ac-

tion against Illinois National Bank and Trust Company of Rockford, Empire Packing Co., Inc., and Peter Cacciatori, the officer of Empire who had signed the check. Cacciatori was not served with process, and no further action was taken against Empire after a stay order was issued by the United States District Court in the bankruptcy proceeding. The plaintiff's case against Illinois National Bank and Trust Company of Rockford, (hereafter defendant) rests squarely on the ground that as the payor bank it became liable for the amount of the check because it held the check without payment, return or notice of dishonor, beyond the time limit fixed in section 4—302 of the Uniform Commercial Code. Ill. Rev. Stat. 1963, chap. 26, par. 4—302.

The defendant relies upon several alternative defenses. It first asserts that section 4—302, properly construed, does not make it liable for the face amount of the check, and that if the section is construed to impose that liability it violates the principle of separation of powers, and deprives the defendant of due process of law and equal protection of the laws. It then asserts that section 4—214(4) of the Code is invalid because it attempts to provide for preferred claims against national banks, and it contends that the asserted invalidity of that section renders the entire article 4 of the Code void. It relies also upon certain conduct of the plaintiff, which will be described, as establishing defenses by way of waiver and estoppel. The trial court entered judgment for the plaintiff for the face amount of the check, and the defendant has appealed directly to this court because the case involves questions arising under the Constitution of the United States and of this State.

Section 4—302 of the Uniform Commercial Code provides: "In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of Section 4—207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of (a) a demand item * * * if the bank

\* \* \* retains the item beyond midnight of the banking day of receipt without settling for it or \* \* \* does not pay or return the item or send notice of dishonor until after its midnight deadline; \* \* \*." Section 4—104(h) of the Code defines the "midnight deadline" of a bank as midnight on the banking day following the day on which it received the item.

The important issues in the case involve the construction and validity of section 4—302. The defendant argues that the amount for which it is liable because of its undenied retention of the check beyond the time permitted by section 4—302 is not to be determined by that section, but rather under section 4—103(5) which provides that "[t]he measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care \* \* \*." To support this argument it points out that other provisions of article 4 use the words "liable" "must pay" and "may recover." Its position is that the word "accountable" in section 4—302 means that "the defendant must account for what it actually had (which is zero because there were not funds on deposit sufficient to pay the check) plus the damages (as measured by Section 4—103(5)) sustained by the plaintiff as the result of the failure to meet the deadline, but for no more."

But the statute provides that the bank is accountable for the amount of the item, and not for something else. "Accountable" is synonymous with "liable", (Webster's New Twentieth Century Dictionary Unabridged, Second Edition; Webster's Dictionary of Synonyms,) and section 4—302 uses the word in that sense. The word "accountable" appears to have been used instead of its synonym "liable" in order to accommodate other sections of article 4 of the Code which relate to provisional and final settlements between banks in the collection process, and to bar the possibility that a payor bank might be thought to be liable both to the

owner of the item and to another bank. The circuit court correctly held that the statute imposes liability for the amount of the item.

This construction does not create an irrational classification and so cause the statute to violate constitutional limitations. Defendant's contention to the contrary is based upon the proposition that section 4—302 is invalid because it imposes a liability upon a payor bank for failing to act prior to its midnight deadline that is more severe than the liability which section 4—103(5) imposes upon a depositary bank or a collecting bank for the same default. Of course there are no such separate institutions as depositary, collecting and payor banks. All banks perform all three functions. The argument thus comes down to the proposition that the failure of a bank to meet its deadline must always carry the same consequence, regardless of the function that it is performing.

But the legislature may legitimately have concluded that there are differences in function and in circumstance that justify different consequences. Depositary and collecting banks act primarily as conduits. The steps that they take can only indirectly affect the determination of whether or not a check is to be paid, which is the focal point in the collection process. The legislature could have concluded that the failure of such a bank to meet its deadline would most frequently be the result of negligence, and fixed liability accordingly. The role of a payor bank in the collection process, on the other hand, is crucial. It knows whether or not the drawer has funds available to pay the item. The legislature could have considered that the failure of such a bank to meet its deadline is likely to be due to factors other than negligence, and that the relationship between a payor bank and its customer may so influence its conduct as to cause a conscious disregard of its statutory duty. The present case is illustrative. The defendant, in its position as a payor bank, deliberately aligned itself with its customer in order to pro-

tect that customer's credit and consciously disregarded the duty imposed upon it. The statutory scheme emphasizes the importance of speed in the collection process. A legislative sanction designed to prevent conscious disregard of deadlines can not be characterized as arbitary or unreasonable, nor can it be said to constitute a legislative encroachment on the functions of the judiciary.

The defendant contends that section 4—214(4) of the Code is an unconstitutional attempt to control the distribution of assets of insolvent national banks, and that the invalidity of that section renders the entire article 4 void. The Illinois Bank Collection Code (Ill. Rev. Stat. 1935, chap. 16a, pars. 25-39,) contained a similar provision, and in *People ex rel. Barrett* v. *Union Bank and Trust Co.,* 362 Ill. 164, that Code was declared invalid in its entirety because "the legislature was without authority to attempt to control such distribution by providing for a preference in claims against National banks" and "the legislature had no intention to create a situation where the rights of owners of commercial paper depend upon whether it is payable by or at a State or a National bank." The Official Comments indicate that the draftsmen intended that section 4—214 should apply to state banks even if it could not be applicable to national banks. (Smith-Hurd Ill. Ann. Stat., chap. 26, par. 4—214, Official Comment 3.) But in any event, under the severability provision of section 1—108, the invalidity of section 4—214 would have no effect upon section 4—302.

On October 4, 1964, an officer of the defendant asked the plaintiff to re-present the check for payment. The plaintiff did not do so. Later Empire Packing Company offered to pay the plaintiff $5,000 in cash and the balance of the amount of the check in equal installments. The plaintiff rejected this offer. From the failure to re-present or to agree to extend credit the defendant attempts to distill a waiver or estoppel that would bar the plaintiff from asserting its rights under section 4—302. But the plaintiff did not in-

duce the defendant to act nor was it guilty of any deception. The facts relied upon to constitute waiver or estoppel were legally insufficient and the trial court did not err in striking those defenses.

The judgment of the circuit court of Rock Island County is affirmed.

*Judgment affirmed.*