[Civ. No. 1442. Fifth Dist. Feb. 22, 1972.]

BANK OF AMERICA, Plaintiff and Appellant, v.
SECURITY PACIFIC NATIONAL BANK, Defendant and Respondent.

## COUNSEL

Sachsman, Mason & Roberg and Richard M. Roberg for Plaintiff and Appellant.

Lerrigo, Thuesen & Thompson and C. Richard Walters for Defendant and Respondent.

## OPINION

**BROWN (G. A.), J.** — This is an appeal by plaintiff, Bank of America National Trust and Savings Association, referred to as America, from a

judgment of dismissal after the trial court sustained the demurrer of the respondent, Security Pacific National Bank, a national banking association, referred to as Security, to America's first amended complaint without leave to amend.

The ultimate issue to be determined is the proper statute of limitations applicable to plaintiff's cause of action. The parties contend this determination involves the three-year statute of limitations contained in Code of Civil Procedure section 338, subdivision 1 (liability created by statute), Code of Civil Procedure section 338, subdivision 3 (conversion), and the four-year statute of limitations contained in Code of Civil Procedure section 337, subdivision 1 (action upon a contract obligation or liability founded upon an instrument in writing). The proper resolution of this question is dependent in turn on applicable legal principles in certain areas of negotiable instruments law under the Uniform Commercial Code. In substantial part they are questions of first impression in California.

Paul E. Ellis and E. B. Orman, Jr., doing business as Fresno Cotton Sales, as drawers, made and delivered seven commercial instruments, alleged to be sight drafts, payable to various payees. The face amount of the seven instruments totaled $63,926.65 and all were drawn on the respondent Security. Each instrument directed Security to pay the amounts stated at sight. The payees endorsed and deposited the drafts in America, which it took in due course of business without notice of any infirmities therein. Each of the individual drafts was identical in context except as to the name of the payee, the date and the amount thereof. While the date of presentment by America, the date of return by Security to America and the date of re-presentment by America to Security varied as to each draft, one of such drafts is illustrative of the group and the rest of the drafts can be considered identical insofar as the applicable legal principles are concerned. Referring to one of the drafts pro forma, it is dated December 12, 1965. It was endorsed and deposited in appellant America on December 28, 1965. On January 3, 1966, America in due course of business presented it to respondent Security for payment as a cash item. At the time the item was presented the drawers had sufficient money in their commercial account at Security to pay said sight draft. On January 4, 1966, Security returned said sight draft without giving a separate notice of dishonor or giving any other reason for said return. On January 4, 1966, in due course of business America re-presented said draft to Security for payment. On March 23, 1966, Security returned the draft unpaid.

The amended complaint alleges:

"At all times alleged, and for numerous years prior to the events de-

scribed herein, there existed a banking custom in the Fresno area which dictated the return or payment of such re-presented items as herein described within no more than ten days. If such items were not returned or paid within such period it was deemed that the bank to which presentment was made agreed to pay such items.

"SECURITY was aware of said custom prior to and including the time that BANK re-presented said sight draft to it, and SECURITY had treated such items in accordance with said custom prior to the transaction herein described.

" . . . . . . . . . . . . . . . . . . .

"SECURITY agreed to pay BANK the amount of said sight draft by not paying or returning it within the customary period described above."

The appellant alleges notice of nonpayment to the drawers[1] and an assignment from the payees for value to appellant America of all of their right, title and interest in and to said drafts.

 Security's demurrer to the first amended complaint was sustained without leave to amend on the ground that the action was barred by the three-year statute of limitations contained in Code of Civil Procedure section 338.[2] If the three-year statute is applicable the trial court was correct as it is conceded that more than three years elapsed between the time the cause of action arose (Com. Code, § 3122) and the suit was commenced. However, less than four years elapsed and it is appellant's position that the four-year statute of limitations contained in Code of Civil Procedure section 337 is applicable.

 For the purpose of the demurrer, all facts well pleaded in the complaint and those which reasonably arise by implication from such facts must be deemed true (*Girth* v. *Thompson* (1970) 11 Cal.App.3d 325, 328 [89 Cal.Rptr. 823]; *Harvey* v. *City of Holtville* (1969) 271 Cal.App.2d 816, 819 [76 Cal.Rptr. 795]) and the court is mindful of the admonition contained in Code of Civil Procedure section 452 that on an appeal from a judgment entered on a demurrer the allegations of the complaint must be liberally construed with a view to obtaining substantial justice between

---

[1]The drawers are named defendants in the action but were not parties to the demurrer and are not parties to this appeal.

[2]The amended complaint attempts to allege a separate cause of action as to each of the seven drafts, the gravamen of which appears to be an alleged contract between the makers and the payees, wherein Security was directed to pay payees the sums mentioned and that said sums are due to America as payee-assignee of said contracts. This theory was not urged or pursued in the trial court, nor is it mentioned on appeal. At the oral argument counsel for the appellant stated that it had been abandoned.

the parties (*Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 245 [74 Cal.Rptr. 398, 449 P.2d 462]). However, appellant was given leave to amend once. It has not sought to amend and has not complained that leave to amend was not given upon sustaining the demurrer to its first amended complaint. We, therefore, assume that in its first amended complaint it has stated its case as favorably as can be stated and that it is desirous of standing upon the allegations of the complaint as amended.

Commercial Code section 3419 provides in pertinent part: "(1) An instrument is converted when (a) A drawee to whom it is delivered for acceptance refuses to return it on demand; or (b) Any person to whom it is delivered for payment refuses on demand either to pay or to return it; . . ." Assuming the complaint may be construed to allege a conversion, the applicable statute of limitations would be the three-year statute in Code of Civil Procedure section 338, subdivision 3.[3]

Commercial Code section 4302 provides in pertinent part: "In the absence of a valid defense such as breach of a presentment warranty (subdivision (1) of Section 4207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of (a) A demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; . . ."

Section 4301 makes clear that the payor bank has until its midnight deadline to act. Section 4104, subdivision (1) (h), defines midnight deadline to be: "(1) In this division unless the context otherwise requires . . . (h) 'Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later;" and section 3104, subdivision (2)(a), brings the instrument involved here within the definition of a demand item for the purpose of section 4302, subdivision (a). Section 4301, subdivision (3), sets forth that the return of an item for the purpose of dishonor is legally sufficient to constitute a dishonor.

We have been unable to find any California case delineating the scope of Commercial Code section 4302. Several cases from other jurisdictions

---

[3]As there is no special statute of limitations set forth in the Commercial Code, the provisions of the Code of Civil Procedure pertaining to limitations of actions are applicable (Com. Code, § 1103).

have construed identical language contained in the Uniform Commercial Code to provide a basis for a statutory cause of action for the amount of the demand item involved (*Rock Island Auction Sales* v. *Empire Packing Co.* (1965) 32 Ill.2d 269 [204 N.E.2d 721, 18 A.L.R.3d 1368]; *Farmers Coop. Livestock Mkt.* v. *Second Nat. Bank* (Ky. 1968) 427 S.W.2d 247, 249-250; *National City Bank of Rome* v. *Motor Contract Co.* (1969) 119 Ga.App. 208 [166 S.E.2d 742, 743]). Those courts have construed the word "accountable" contained in section 4302 to be synonymous with "liable" and have imposed liability on the payor bank for the amount of the item for a delay in returning the item beyond the bank's midnight deadline. In the leading case of *Rock Island Auction Sales* v. *Empire Packing Co.*, *supra*, the court states: "But the statute provides that the bank is accountable for the amount of the item, and not for something else. 'Accountable' is synonymous with 'liable', (Webster's New Twentieth Century Dictionary Unabridged, Second Edition; Webster's Dictionary of Synonyms,) and section 4—302 uses the word in that sense. The word 'accountable' appears to have been used instead of its synonym 'liable' in order to accommodate other sections of article 4 of the Code which relate to provisional and final settlements between banks in the collection process, and to bar the possibility that a payor bank might be thought to be liable both to the owner of the item and to another bank. The circuit court correctly held that the statute imposes liability for the amount of the item." (204 N.E.2d at p. 723.)

The California code comments to section 4302 (West's Com. Code Ann.) state in part: "If the bank fails to act by its midnight deadline, the bank is accountable for the amount of the item. This is in accord with prior California law. Kriste v. International Savings and Exchange Bank, 17 Cal.App. 301, 119 Pac. 666 (1911) (failure to give notice of dishonor within prescribed time limits resulted in the bank being held liable for the amount of the item)."

We agree with the reasoning of the above authorities and hold that section 4302 creates a liability independent of negligence (see Com. Code, § 4103, subd. (5)) or conversion (Com. Code, § 3419) for the amount of the item involved. In arriving at this conclusion we are mindful of the importance of securing uniformity in the interpretation of the provisions of the Uniform Commercial Code among the various jurisdictions (Com. Code, § 1102, subd. (2)(c)).

Inasmuch as the sight drafts were returned upon the first presentment by the midnight deadline of the payor bank, no cause of action against the respondent arose under this section by virtue of the first presentment. The question arises whether the liability created under section 4302 is equally

applicable to a second presentment of a draft previously returned to the holder. As will be recalled, each of the seven drafts here involved was represented on the day following its return to appellant. The respondent in each case delayed many days beyond its midnight deadline in returning the drafts to appellant after the re-presentment. We find it unnecessary to pass upon this question since, even if such liability did arise, it was a liability created by statute and the action would be barred by the three-year statute of limitations pertaining to such an action (Code Civ. Proc., § 338, subd. 1).

However, we note in passing that at least one court has held that no liability is created under Commercial Code section 4302 by virtue of a delay in returning the item to the holder until after the midnight deadline after re-presentment (see *Leaderbrand* v. *Central State Bank of Wichita* (1969) 202 Kan. 450 [450 P.2d 1, 9]). The *Leaderbrand* case holds that the Uniform Commercial Code discloses a statutory scheme to require the payor bank to give timely notice of dishonor to the party presenting the check just once and that such notice of dishonor fixes the time at which the item is dishonored by the payor bank and subsequent re-presentment does not require an additional notice of dishonor by the payor bank. The holding in that case is based primarily upon the provisions of Commercial Code section 4301, subdivision (3), providing that an item is dishonored when it is for the purpose of dishonor returned, and section 3511, subdivision (4), which in substance provides that when a draft has been dishonored a later presentment and notice of dishonor are excused.

Appellant has taken the position that under its allegations of custom and usage that upon re-presentment the drawee bank has 10 days to pay or return the sight draft and failure to do either amounts to an agreement by the respondent bank founded upon a written instrument to pay the item in full. It states that such agreement is within the four-year statute of limitations set forth in Code of Civil Procedure section 337.

Respondent's position in this connection is that the evidence of custom and usage is inadmissible since custom and usage cannot change or vary the positive provisions of the statutory rules pertaining to acceptance contained in Commercial Code sections 4302 (establishing a midnight deadline), 3419 (providing that retention is a conversion), and 3410 (requiring acceptance to be in writing). See *American Nat. Bk.* v. *A. G. Sommerville* (1923) 191 Cal. 364, 371 [216 P. 376]; *Verdugo Highlands, Inc.* v. *Security Ins. Co.* (1966) 240 Cal.App.2d 527, 532 [49 Cal.Rptr. 736]; *National City Bank of Rome* v. *Motor Contract Co., supra,* 119 Ga.App.

208 [166 S.E.2d 742, 743]; 1 Witkin, Summary of California Law (7th ed. 1960) section 225, at pages 253-254.

Appellant argues that the Commercial Code recognizes the right to introduce evidence of custom and usage as evidence of an agreement which may vary the terms of the statutory scheme (see Com. Code, §§ 1102, subds. (1), (2) (b) and (3), 1103, 1205, 4103, 3409, subd. (2)).

We do not resolve this problem of whether evidence of custom and usage is admissible as we are of the opinion that assuming, arguendo, such evidence is admissible, the obligation created thereby would not be "An action upon any contract, obligation or liability founded upon an instrument in writing, . . ." (Code Civ. Proc., § 337).

It is the rule that the written agreement referred to in Code of Civil Procedure section 337 does not have to be signed by the party to be charged, as in the case of the statute of frauds (*Amen* v. *Merced County Title Co.* (1962) 58 Cal.2d 528, 533 [25 Cal.Rptr. 65, 375 P.2d 33]). As is stated in *Benard* v. *Walkup* (1969) 272 Cal.App.2d 595, at page 602 [77 Cal.Rptr. 544]: "It is well established that the receipt and acceptance by one party of a writing signed by the other only, and purporting to embody all the terms of a contract between the two, binds the acceptor as well as the signer, to the terms of the writing. [Citations.]" (Fn. omitted.)

Therefore, it appears that while the acceptance does not have to be in writing, the writing which is orally accepted must contain the items of the agreement and the obligations sued upon (*Benard* v. *Walkup, supra*, at p. 603; *Murphy* v. *Hartford Acc. & Indem. Co.* (1960) 177 Cal.App.2d 539, 543 [2 Cal.Rptr. 325]). In *Sunset Pac. Oil Co.* v. *Railroad Co.* (1930) 110 Cal.App.Supp. 773, 781 [290 P. 434], the court states: "In order to be founded upon an instrument in writing, the instrument must itself contain a contract to do the thing, for the non-performance of which the action is brought. [Citations.]" In the latter case quite properly the court held that the action by a shipper against a common carrier to recover overcharges in excess of published tariffs was based upon a statute prohibiting the collection of excess tariffs and, therefore, was within the three-year statute contained in Code of Civil Procedure section 338, subdivision (1); it was not an action to recover upon a written contract of carriage which contained no agreement to refund excess charges.

*Amen* v. *Merced County Title Co., supra*, 58 Cal.2d 528, involved written escrow instructions for the purchase and sale of real property between plaintiff purchaser and a third party as seller. The instructions were prepared by the defendant escrow company and expressly set forth the obligations of the defendant company as escrow agent. The escrow company

did not sign the instructions, but orally accepted the obligation of acting as escrow agent. The plaintiff sued the title company for damages, alleging that in breach of the agreement it closed the escrow without requiring payment by the sellers of sales taxes then due as specified in the instructions. The court held the action was one on a written contract and was subject to the four-year statute of limitations. The written instrument was the escrow instructions, which set forth the title company's obligations, even though the title company did not sign the instructions.

The result we arrive at herein is consistent with the *Amen* case. A draft is a negotiable instrument drawn by the maker ordering the payor bank to pay the holder, or order, the amount specified (Com. Code, § 3104). The payor bank has no obligation to a holder or endorsee until the draft is accepted by it. Under the code the acceptance must be in writing (Com. Code, § 3410). Until it is accepted there is no written agreement or engagement or promise of any kind in the written document constituting the draft which makes it obligatory on the part of the payor bank to accept it. The sight draft or demand item is no more than an instrument serving as a link in the chain establishing a cause of action and does not in itself contain any contract or term of agreement to do the thing for which the action is commenced. We do not believe that the depository bank should be permitted to boot strap itself around the specific provisions of the various code sections hereinabove set forth by first alleging a custom on the basis of which the payor is to be held to have accepted the draft and then argue that the acceptance by custom converts the instrument into an agreement in writing to pay the draft—all in the interest of circumventing the three-year statute of limitations.

We, therefore, conclude that the trial court was correct in its ruling that the action was barred by the three-year statute of limitations and in sustaining the demurrer to plaintiff's first amended complaint without leave to amend; it appearing that the appellant could not have stated a cause of action against the respondent, Security, which would bring the cause within the four-year statute of limitations (*La Vista Cemetery Assn.* v. *American Sav. & Loan Assn.* (1970) 12 Cal.App.3d 365, 369 [90 Cal.Rptr. 722]).

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.