**NEW ULM STATE BANK, Appellant,**

v.

**Robert B. BROWN et al., Appellees.**

**No. 16902.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 4, 1977.

Conner, Odom & Clover, C. E. Clover, Jr., Sealy, for appellant.

Kamp, Pope & Shoemake, T. Turner Pope, III, Houston, for appellees Robert B. Brown and Hayden Rabon d/b/a B & R Cattle Co.

Kelberg, Mobley, Lockett & Weil, Matthew A. Rosenstein, Corpus Christi, for appellee State Nat. Bank of Robstown.

EVANS, Justice.

This is a bank collection case involving documentary drafts.

Kenneth Richardson, doing business as R & R Farms, Inc. and Robert B. Brown and Hayden Rabon, doing business as B & R Cattle Company were cattle traders, having bought and sold each other's cattle since 1965. Each time Richardson bought cattle from Brown, he would instruct Brown to draw a draft on New Ulm State Bank, where R & R Farms, Inc. maintained its account. Brown would cause a "bill of sale" draft to be prepared, naming B & R Cattle Company as the payee, for the amount of the purchase price of the cattle. B & R Cattle Company would then deposit the draft with State National Bank of Robstown, where it would receive immediate credit to its account, and State National Bank of Robstown would transfer the draft to New Ulm State Bank for payment or dishonor. There were eleven drafts transferred by State National Bank of Robstown

to New Ulm State Bank in connection with the transactions in question. A history of these drafts is indicated by the following schedule:

| EXHIBIT NUMBER | DATE OF DRAFT | AMOUNT | DATE REC'D BY NEW ULM BANK | DATE RETURNED | DAYS HELD AFTER PRE-SENTMENT |
|---|---|---|---|---|---|
| Px 1 | 7/ 5/74 | $ 6,613.47 | 7/ 8/74 | 7/26/74 | 18 |
| Px 2 | 7/16/74 | 5,705.33 | 7/17/74 | 7/26/74 | 9 |
| Px 3 | 7/19/74 | 10,567.90 | 7/20/74 | 7/26/74 | 6 |
| Px 4 | 7/23/74 | 6,600.15 | 7/24/74 | 7/26/74 | 2 |
| Px 5 | 7/26/74 | 6,697.57 | 7/27/74 | 8/ 6/74 | 10 |
| Px 6 | 7/29/74 | 13,529.04 | 7/31/74 | 8/ 6/74 | 6 |
| Px 7 | 7/30/74 | 11,131.03 | 8/ 2/74 | 8/ 6/74 | 4 |
| Px 8 | 7/29/74 | 6,613.47 | 7/31/74 | 8/ 6/74 | 6 |
| Px 9 | 7/29/74 | 5,705.33 | 7/31/74 | 8/ 6/74 | 6 |
| Px 10 | 7/29/74 | 10,567.90 | 7/31/74 | 8/ 6/74 | 6 |
| Px 11 | 7/29/74 | 6,600.15 | 7/31/74 | 8/ 6/74 | 6 |

The testimony shows that the drafts marked Exhibits 1 through 4 were returned to State National Bank of Robstown by New Ulm State Bank with the stamped notation "refer to maker". Upon Richardson's representation that the four drafts would be honored if they were re-presented, B & R Cattle Company caused four new drafts to be prepared, shown as Exhibits 8 through 11, which he deposited with State National Bank of Robstown, and which were then transferred by that bank to New Ulm State Bank. All of the exhibits marked Plaintiff's Exhibits 5 through 11 were subsequently returned to State National Bank of Robstown by New Ulm State Bank, on the dates indicated, with the stamped notation "no authority to pay".

Mr. Charles Mewis, a Vice President and Cashier of New Ulm State Bank, and the bank officer responsible for handling Richardson's checks and drafts, testified that Richardson was a good customer of the bank and that his account showed a high volume of outgoing and incoming drafts. Normally, Richardson appeared each day at the bank to examine the drafts which had been presented for payment against his account. He would customarily write a check for the amount of the draft, and upon his payment, the bank would turn over the draft to him. The bank would then apply the check against his account, and it would send a cashier's check for the amount of the draft to the transferring bank. This transaction usually occurred on the day following the day when a draft was first presented to Richardson. Mr. Mewis testified that a draft would not have been honored unless Richardson first delivered his check to the bank in payment.

During the period of time that the eleven drafts in question were being handled by the bank, Richardson was in serious financial condition, a fact known to Mr. Mewis. Richardson had been given immediate credit by the bank for approximately $94,000.00 worth of drafts on cattle sales he had made in the State of Oklahoma. In July 1974, Mr. Mewis knew that those drafts were going to be returned unpaid, and he began to "capture" all deposits made to Richardson's account, which he held for the benefit of New Ulm State Bank. Mr. Mewis testified that he did not transmit to State National Bank of Robstown any information concerning Richardson's financial condition, and he conceded that he had not fairly represented to State National Bank of Robstown the extent of Richardson's financial difficulties. He also testified that he had been given instructions by the President of New Ulm State Bank that he should try to keep Richardson in business and that he was following those instruc-

tions in his handling of the drafts in question.

"Q Didn't Mr. Harris at one time give you instructions to try to keep Mr. Richardson in business?

A Yes, sir.

Q And weren't you following those instructions when you kept these drafts beyond the time period when you should have sent them back or paid them?

A I was—yes. I was trying to keep Mr. Richardson in business."

B & R Cattle Company brought this action against New Ulm State Bank, claiming that it had been damaged by reason of the bank's failure to timely return the drafts in question to State National Bank of Robstown. New Ulm State Bank filed a cross-action against Richardson and R & R Farms, Inc. and against State National Bank of Robstown. A cross-action was also filed by State National Bank of Robstown against New Ulm State Bank and B & R Cattle Co.

After a jury trial, the trial court instructed a verdict in favor of B & R Cattle Company against New Ulm State Bank for the sum of $60,844.49, being the aggregate face amount of the seven drafts in question, plus pre-judgment interest in the amount of $8,001.47 and for an additional sum of $5,000.00 as damages based upon the jury's finding that New Ulm State Bank had acted in bad faith in failing to pay or return the drafts within the time provided by law. The trial court also decreed that State National Bank of Robstown was entitled to a preferential lien against the judgment rendered in favor of B & R Cattle Company and that New Ulm State Bank was entitled to judgment against Richardson and R & R Farms, Inc. All other claims for affirmative relief were denied.

This partial appeal, perfected by New Ulm State Bank, is from that portion of the judgment awarding B & R Cattle Company a recovery against New Ulm State Bank and establishing a preferential lien against the judgment in favor of State National Bank of Robstown. The other parties to the action have not perfected an appeal.

In its first seven points of error New Ulm State Bank complains that the trial court erred in instructing a verdict in favor of B & R Cattle Company, contending that the evidence raised fact issues for the jury on the question of whether the bank acted in a timely manner in returning the drafts.

In determining the nature of New Ulm's responsibility in handling the drafts, it is necessary to examine their form and substance. All of the drafts are similar in form; plaintiff's Exhibit No. 5, set forth below, being typical:

Bank, at its option, may refuse to honor this draft unless Bill of Sale below is properly filled out. If livestock is encumbered, mortgagee or lienholder must endorse consent of sale and release on reverse.

PAY TO THE ORDER OF  **BILL OF SALE DRAFT** _____ July 26, ____, 19 74

HAYDEN RABON AND ROBERT B. BROWN

$6,697.57 _____ $ Six Thousand Six Hundred Ninty-Seven ___ DOLLARS

R & R Farms, Inc. _____ Dollars and 57/100---------------------------

New Ulm State Bank

New Ulm, Texas _____ By *B&R Cattle Co* (Purchaser Sign Here)

| NO. | KIND OR CLASS | AVE. Wt. | BRAND & LOCATION | GR. WEIGHT | % SHRINK | NET WEIGHT | PRICE | TOTAL $ |
|-----|---------------|----------|------------------|------------|----------|------------|-------|---------|
| 13 | 50 | 162 | | | | 2,110 | 40.26 | 849.57 |
| 7 | 60 | 215 | | | | 1,505 | 33.83 | 509.18 |
| 9 | 66 | 497 | | | | 4,475 | 34.72 | 1,554.04 |
| 40 | 22 | 269 | | | | 10,765 | 35.15 | 3,784.78 |
| | | | | | | | | |
| | | | | | | | | |

KNOW ALL MEN BY THESE PRESENTS: That I, the Seller, signing hereunder and residing in the County of Nueces, State of Texas, in consideration of the payment of the above draft, do bargain and sell, and, by these presents do bargain and sell unto _____ the herein described livestock, and hereby bind myself to warrant and defend the title to said livestock against any person claiming the same or any part of them, and further, warrant that the livestock as described herein is free and clear of any encumbrance or lien whatsoever except those for which consent to said sale and release of said lien is endorsed on this draft as provided for hereon.

_____
(Witness)

*Robert B. Brown by Sally Healy*
(Seller Signs Here)

FROM:

P. O. BOX 1268
ROBSTOWN, TEXAS 78380

88-1590
1149

REPORT BY Nº 6950
AND DATE July 26, 1974

WE ENCLOSE FOR COLLECTION AND RETURN OR CREDIT WHEN PAID

| DRAWER | ENDORSER | PAYER | AMOUNT |
|---|---|---|---|
| B & R Cattle Co. Hayden Rabon & Robert B. Brown | State National Bank | R.&R. Farms, Inc. | $6,697.57 |

KIND OF PAPER draft   DATE DUE sight

New Ulm State Bank
Box 155
New Ulm, Texas 78950

*no authority to pay*

SPECIAL INSTRUCTIONS

NO PROTEST

Deliver documents only upon payment Do not hold after maturity or for convenience of payer.
The proceeds of this collection must not be mingled with your general funds or credited to our account, but you will please remit promptly when collection is made. All funds collected shall remain the property of our depositor, until the proceeds of the remittance are received and finally credited, and the acceptance of any draft for the same or any portion thereof, is subject to final payment

---

Each draft is payable "at sight", constituting the instrument a "demand" item. Tex.Bus & Comm.Code Ann. § 3.108. Each designates B & R Cattle Co. as "payee" and both R & R Farms, Inc. and New Ulm State Bank as "drawees". Accompanying each draft is a bill of sale for a specific number of livestock, constituting the item a "documentary draft" as defined in Tex.Bus. & Comm.Code Ann. § 4.104(6). *Marfa National Bank v. Powell*, 512 S.W.2d 356 (Tex.Civ. App.—El Paso 1974, writ ref'd n.r.e.).

■ The first theory of liability relied upon to support the trial court's judgment is that New Ulm State Bank converted the drafts in question under the provisions of Tex.Bus. & Comm.Code Ann. § 3.419:

"(a) An instrument is converted when

(1) a drawee to whom it is delivered for acceptance refuses to return it on demand; or

(2) any person to whom it is delivered for payment refuses on demand either to pay or to return it; or

(3) it is paid on a forged indorsement.

(b) In an action against a drawee under Subsection (a) the measure of the drawee's liability is the face amount of the instrument. In any other action under Subsection (a) the measure of liability is presumed to be the face amount of the instrument."

The Official Comment to Section 3.419 states that an action based upon that section of the Code is not an action on the instrument, but, rather, an action in tort for its conversion. It further explains that the "demand" for the return of the instrument may be implied under the circumstances or understood as a matter of custom, and that the term "refuses to return" is meant to cover any intentional failure to return the instrument.

The drafts in question, being demand instruments, were due and actionable upon presentation. *Henry v. Roe*, 83 Tex. 446, 18 S.W. 806 (1892). The collection letter to New Ulm State Bank specifically instructed the bank not to hold the item after maturity or for the convenience of the payer. In view of the bank's own admission that the drafts were held after demand for the purpose of assisting its customer, the trial court could have concluded, as a matter of law, that a demand was made for the return of each draft at the time of delivery and that there was an intentional failure by New Ulm State Bank to return the instrument. Thus the trial court's judgment may be upheld upon the theory of conversion under Tex.Bus. & Comm.Code Ann. § 3.419.

■ The trial court's judgment may also be sustained upon the theory that New Ulm State Bank became liable as a "payor" bank for the late return of the drafts under the provisions of Tex.Bus. & Comm.Code Ann. § 4.302 which provides:

"In the absence of a valid defense such as breach of a presentment warranty (Subsection (a) of Section 4.207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of

(1) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or

(2) any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents."

A "payor" bank is defined as "a bank by which an item is payable as drawn or accepted." Tex.Bus. & Comm.Code Ann. § 4.105(2). The payor bank includes a "drawee" bank and also a bank "at which" an item is payable if the item constitutes an order on the bank to pay. See, Official Comment 2, § 4.105(2). An order to pay may be addressed to one or more persons jointly. Tex.Bus. & Comm.Code Ann. § 3.102(a)(2).

The drafts in question designate both R & R Farms, Inc. and New Ulm State Bank as drawees and the order to pay is addressed to them jointly. The trial court evidently determined that the New Ulm State Bank acted as a "payor" bank in handling the drafts, and all parties concur that the bank acted in that capacity. There being no evidence that New Ulm State Bank acted in a capacity other than a payor bank, its liability is measured by the provisions of Tex.Bus. & Comm.Code Ann. § 4.302.

Each draft in question constituted an order on New Ulm State Bank, as the drawee bank, to pay the face amount of the draft. Although the draft did not, of itself, oper-

ate as an assignment of funds in the bank's hands available for payment, and did not subject the bank to liability under the instrument until acceptance, the bank did have the obligation to handle the draft in a timely manner. Tex.Bus. & Comm.Code Ann. § 3.409, Official Comment No. 2. Its liability for the late return of an item resulted from the responsibilities imposed upon it under the statute, and a recovery based upon its failure to perform its statutory duty was not dependent upon a showing that the instrument was enforceable against it. 2 Bender, Uniform Commercial Code Service, 7–31, § 7.15(2).

It is a contention of New Ulm State Bank that § 4.302 does not apply to the case at bar because the drafts in question were "documentary drafts". In support of this contention the bank relies upon the decision in *Marfa National Bank v. Powell*, supra, indicating that documentary drafts are governed by the provisions of Tex.Bus. & Comm.Code Ann. § 5.112, and that a bank acting under that section may defer honor of the drafts until the close of the third banking day following receipt. Section 5.112 is applicable only to documentary drafts presented under a letter of credit, and, thus, is inapplicable to the drafts in question here. It also appears that the decision in the *Marfa* case was based upon a finding that the holder of the instrument consented to the bank's deferment of action until the end of the third banking day following receipt, and the decision is further distinguishable on that ground.

Since subsection (1) of Tex.Bus. & Comm. Code Ann. § 4.302, applies to demand items other than documentary drafts, that section is inapplicable to the drafts in the case at bar. However, subsection (2) of Tex.Bus. & Comm.Code Ann. § 4.302 does apply to documentary drafts, and would be applicable here unless, as New Ulm State Bank contends, the drafts in question were not "properly payable" as that term is used in the Code. The term "properly payable" is defined in the Code to include "the availability of funds for payment at the time of decision to pay or dishonor." Tex.Bus. &

Comm.Code Ann. § 4.104(9). It is the contention of New Ulm State Bank that the evidence shows the funds on hand in its customer's account were not sufficient to pay the drafts in question because they had been "frozen" to protect the bank against the return of the Oklahoma drafts.

There was evidence before the trial court from which it could have concluded, as a matter of law, that there were funds in the customer's account available for payment of the drafts. Mr. Mewis testified:

"Q A hundred and eight thousand dollars is what you built up in Mr. Richardson's account by deliberately not paying any drafts during that period of time?

A Or checks.

Q Or checks?

A Yes sir.

Q You did that to protect the New Ulm bank did you not?

A Yes, sir.

Q What did you do—why did you do it—so that you could debit the ninety-four thousand dollars that was coming back?

A Yes, sir.

Q And did you in fact debit that sum?

A Yes, sir.

Q On what day?

A On July 24th.

Q And that left a total amount in Mr. Richardson's account of how much?

A He was sixteen hundred and seventy-eight dollars and sixty-two cents overdrawn.

Q Even then?

A Yes, sir.

Q Even after the four or five days that you kept the drafts from being paid?

A Yes, sir.

Q And that benefited the New Ulm bank did it not?

A Yes, sir.

Q And during that time though you did not call the Robstown bank and indicate what you were doing did you?

A No, sir."

Thus the record shows that even though the bank for its own benefit "froze" its customer's account, there was a balance on deposit in its customer's account sufficient to pay each of the items being held. Furthermore, the insufficiency of the funds in the customer's account would not have relieved the bank of its responsibility to timely return the items in question to the transferring bank. New Ulm State Bank does not contend that the drafts were not otherwise "properly payable" as drawn, and being designated as a joint drawee on the drafts, it had the statutory responsibility to return the drafts to its transferor, notwithstanding the condition of its customer's account.

The Official Comment 2, Tex.Bus. & Comm.Code Ann. § 4.302, states that the time limits within which a payor bank must accept, pay or return a demand item, other than a documentary draft, are those prescribed under the provisions of § 4.301. Subsection (a) of § 4.301 is applicable to items other than documentary drafts, and therefore does not apply to the drafts in question. Subsection (b) of that section would evidently apply to the case at bar, but the Comment indicates that the section is applicable in cases where the payor bank is also the depository bank. A depository bank is defined as "the first bank to which an item is transferred for collection even though it is also the payor bank." Tex.Bus. & Comm.Code Ann. § 4.105(1). In the case at bar New Ulm State Bank did not act as a depository bank within the Code's definition, and therefore we must look elsewhere for applicable time limits.

■ In order to determine whether a payor bank has made proper payment of an item it is appropriate to look not only to the facts of the particular case, but also to all appropriate sections of Articles 3 and 4 of the Code. See Official Comment, Tex.Bus. & Comm.Code Ann. § 4.203.

Under Tex.Bus. & Comm.Code Ann. § 4.501, Subchapter E, Collection of Documentary Drafts, it is provided that a bank taking a documentary draft for collection

must present or send the draft and accompanying documents for presentment, and upon learning that the draft has not been paid or accepted in due course, the bank must seasonably notify its customer of such fact. An action is taken seasonably when it is taken "within a reasonable time." Tex. Bus. & Comm.Code Ann. § 1.204.

A collecting bank taking proper action before its midnight deadline (i. e., midnight of the next banking day following the banking day of receipt of the item) acts seasonably, and a bank taking proper action within a reasonably longer time may be seasonable, but the bank has the burden of so establishing. Tex.Bus. & Comm.Code Ann. § 4.202. In the case at bar New Ulm State Bank held the drafts in question for periods of time well beyond its midnight deadline and did not provide any explanation for having done so, other than for the purpose of benefiting itself and the account of its customer. Therefore,, under the undisputed facts the trial court was justified in concluding, as a matter of law, that New Ulm State Bank failed to meet its affirmative burden of establishing that it had acted seasonably in the return of the drafts in question after the expiration of its midnight deadline. *Wiley, Tate & Irby v. Peoples Bank and Trust Company*, 438 F.2d 513, on remand 462 F.2d 179 (5th Cir. 1972); *Suttle Motor Corp. v. Citizens Bank of Poquoson*, 216 Va. 568, 221 S.E.2d 784 (1976).

New Ulm State Bank further argues that even though it acted in the capacity of a payor bank, its liability should be ascertained under the provisions of Section 4.103(e) of the Code, which provides that the measure of damages for a bank's failure to exercise ordinary care is the amount of the item reduced by an amount which could not have been realized by the exercise of ordinary care, plus any consequential damages, sustained, if the bank acted in bad faith. This same contention was advanced in *Rock Island Auction Sales v. Empire Packing Co.*, 32 Ill.2d 269, 204 N.E.2d 721, 723 (1965). The Illinois Supreme Court there held that a payor bank's liability should be determined under the provisions of Section 4.302, and that Section 4.103(e)

was applicable only to "collecting banks", defined by the Code as "any bank other than a payor bank." Tex.Bus. & Comm. Code Ann. § 4.105. Explaining the legislative rationale for holding a payor bank accountable for the face amount of the item, the court said:

"The role of a payor bank in the collection process, on the other hand, is crucial. It knows whether or not the drawer has funds available to pay the item. The legislature could have considered that the failure of such a bank to meet its deadline is likely to be due to factors other than negligence, and that the relationship between a payor bank and its customer may so influence its conduct as to cause a conscious disregard of its statutory duty. The present case is illustrative. The defendant, in its position as a payor bank, deliberately aligned itself with its customer in order to protect that customer's credit and consciously disregarded the duty imposed upon it. The statutory scheme emphasizes the importance of speed in the collection process. A legislative sanction designed to prevent conscious disregard of deadlines can not be characterized as arbitrary or unreasonable, nor can it be said to constitute a legislative encroachment on the functions of the judiciary." (204 N.E.2d 723).

Upon concluding that New Ulm State Bank did not act timely in returning the drafts in question, the trial court properly entered judgment holding it accountable for the face amount of the drafts. The first seven points of error are overruled. The twelfth point of error in which it is contended that the damages should be reduced under the provisions of Article 4.103(e) is also overruled.

■ In its eighth, ninth and tenth points of error New Ulm State Bank contends that the trial court erred in not submitting issues to the jury with respect to the alleged negligence of B & R Cattle Company and State National Bank of Robstown in handling the items in question. These points are overruled. The liabilities created under

**28**

the provisions of the Code are independent of those based upon theories of negligence. *Bank of American Nat'l T. & S. Ass'n v. Security Pac. Nat'l Bank,* 23 Cal.App.3d 638, 100 Cal.Rptr. 438 (1972); *Pacific Products, Inc. v. Great Western Plywood, Ltd.,* 528 S.W.2d 286, 291 (Tex.Civ.App.—Fort Worth 1975, no writ); Tex.Bus. & Comm. Code Ann. § 1.103.

In its eleventh point of error New Ulm State Bank contends that the trial court erred in failing to submit an issue to the jury with respect to whether there was an implied consent by B & R Cattle Company to the deferment of notice of the items in question. This point is overruled. It is possible for the time requirements imposed by the provisions of the Code to be varied by agreement of the parties, § 4.103, or excused by circumstances beyond the bank's control if it exercises due diligence. Tex. Bus. & Comm.Code Ann. § 3.511 and § 4.108. However, the record in the case at bar does not contain evidence from which it might be inferred that B & R Cattle Company agreed to the deferment of notice of dishonor, nor is there evidence indicating that the delay in returning the documents was a result of circumstances beyond the control of New Ulm State Bank. *Rock Island Auction Sales v. Empire Packing Co.,* supra. On the contrary, the evidence shows that New Ulm State Bank intentionally delayed the return of the drafts in order to benefit its position and that of its customer. The jury findings of bad faith preclude any inference that New Ulm State Bank acted with appropriate diligence in the matter.

The remaining points of error pertain to the trial court's award of damages based upon the jury's finding of bad faith. The judgment of the trial court in this respect can not be sustained. The liability of New Ulm State Bank was established on the basis of strict liability imposed under the provisions of the Code. *Sun River Cattle Co., Inc. v. Miners Bank of Montana,* 164 Mont. 237, 521 P.2d 679 (1974). Since the Code specifically provided a measure of recovery, both for the conversion and the late return of the drafts in question, there is no basis for the imposition of the consequential damages based upon the jury's finding of bad faith.

The trial court's judgment is reversed and rendered to the extent of the judgment award of the sum of $5,000.00 based upon the jury's finding of bad faith; in all other respects the judgment is affirmed.