This appeal and the cross-appeal arise from a suit against a bank by its customer for alleged improper handling of checks. The trial court, sitting without a jury, awarded plaintiff $64,893.23. This appeal raises questions involving several provisions of the Alabama version of the Uniform Commercial Code, including the "midnight deadline" rules of Code 1975, §§7-4-104 (1)(h), -301, and -302.
Tricor Energies, Inc., an Alabama corporation, sued Citibanc of Alabama/Fultondale for the alleged improper payment on October 30, 1978, of a check payable to Tricor. By amendment, Tricor added counts for failure to give timely notice of dishonor of two other checks, one dated November 6, 1978, and the other dated November 8, 1978. Only the October 30 and November 8 checks are at issue in this appeal and cross-appeal, it being conceded that the bank gave timely notice of dishonor of the November 6 check.
At the time of these transactions, Nelson Arnold was a stockholder and director of both Tricor and Citibank. Charles Payne was the other stockholder and director of Tricor, holding 60 per cent of Tricor's stock while Arnold held the other 40 per cent. Payne was president of Tricor and Arnold was vice president.
On October 30, 1978, Arnold presented to Citibank a check drawn by Great Southern Paper Company to the order of Tricor in the amount of $75,992. Instead of depositing the check in Tricor's account, however, Arnold deposited it in his personal account. The check was endorsed as follows:
 "Tricor Energies, Inc. [hand printed] For Deposit Only [hand printed] Nelson Arnold" [script signature]
On November 6, Arnold deposited in Tricor's account at Citibanc a check drawn on his personal account at Citibanc in the amount of $75,992. On November 7 Citibanc charged this November 6 check back to Tricor's account because of insufficient funds in Arnold's account.
On November 8 Arnold deposited a check in the amount of $80,000 into his account at Citibanc. This check was payable to Nelson Arnold and was drawn on an account in the name of "Crude Reclamation, Inc., T.R. Lankford or Nelson Arnold" at the Jasper County Bank in Heidelberg, Mississippi. On the same day, Arnold drew a check payable to Tricor on his account at Citibanc in the amount of $75,992 and deposited it into Tricor's account. On November 17 Citibanc received the $80,000 check which had been returned by the Jasper County Bank for insufficient funds and improper signature. Upon receipt of this check, Citibanc gave notice to Tricor that it would not honor the check Arnold had deposited in Tricor's account on November 8 and charged $75,992 against Tricor's account.
Tricor's original complaint, filed on May 13, 1981, mentioned only the check deposited by Arnold on October 30, 1978. Count one alleged improper payment without the necessary corporate endorsement, count two alleged improper payment in spite of a restrictive endorsement, count three alleged negligence, and count four alleged conversion. Citibanc filed a motion to dismiss and then, on July 31, 1981, an answer denying the material allegations of the complaint and raising the following affirmative defenses: accord and satisfaction, payment of Tricor's claim, the statute of limitations, and waiver.
Citibanc filed an amended answer on September 8, 1982, alleging that Tricor's contributory negligence precluded it from asserting that the endorsement was not authorized. On April 11, 1983, Tricor filed an amended complaint, adding count five, which recited the deposit of the November 8 check and its dishonor on November 17, and alleged:
 "In this transaction, as described, the Defendant Bank was the depository, collecting, and payor bank. *Page 1346 
 "The Defendant Bank is liable to the Plaintiff in the full amount of the check in question, i.e. $75,992.00, due to the fact that Defendant Bank breached its obligation to either pay or return this item or send notice of dishonor within the time permitted by the law of the State of Alabama."
Citibanc filed no response to this amended complaint. On August 23, 1983, Tricor filed another amended complaint, adding count six, which recited the deposit of the November 6 check and alleged the failure to make timely settlement of the check, using the same language as the last paragraph quoted above. On August 26, 1983, Citibanc filed an amended answer, admitting some allegations of count six and denying others. This amended answer added affirmative defenses, alleging that "Count Six, and all other claims asserted by plaintiff, are barred by [1] the applicable statute of limitations, [2] the doctrine of account stated, [3] the doctrine of ratification."
The case went to trial and the court, after hearing ore tenus evidence, entered judgment for Tricor. Citibanc appeals from the judgment, and Tricor cross-appeals from the failure of the trial court to award damages in the full amount of $75,992 plus interest.
We first address Citibanc's argument that the trial court erred in failing to sustain Citibanc's defenses to all counts except count four because the other counts were barred by the statute of limitations. Citibanc argues that counts one, two, and three are actions for simple negligence and thus are barred by the one-year limitation of Code 1975, § 6-2-39 (a)(5)[1] and that counts five and six are barred by the one-year limitation on actions for "a penalty given by statute to the party aggrieved," Code 1975, § 6-2-39 (a)(3).
Citibanc concedes that an action for conversion may be brought within six years under Code 1975, § 6-2-34 (3). Count four alleges a conversion of the October 30 check. The allegations of the original complaint raise the inference that Citibanc converted the October 30 check by allowing Arnold to deposit it to his account instead of to Tricor's. The allegations of improper payment in counts one and two set forth Tricor's contentions regarding the alleged conversion. Thus, the court properly considered the allegations regarding the October 30 check on their merits.
We need not consider whether count six was barred by the statute of limitations, because, as noted above, Tricor concedes that the proof showed no liability in regard to the matters alleged in count six.
The allegations of count five are somewhat more problematic. Count five was in effect a suit for violation of the midnight deadline rule. The question of whether a suit for violation of the midnight deadline rule is a suit for conversion is a complex one, so we reserve the question of whether count five is barred by the statute of limitations for discussion on the merits, below.
On the merits of the claims, we address first the counts based on the October 30 check. Various provisions of the Alabama Uniform Commercial Code address the form in which indorsements are to be made. Code 1975, § 7-3-205, states that an indorsement which includes the words "for deposit" is restrictive, and § 7-3-206 sets forth the effect of a restrictive indorsement. Section 7-3-403 relates to signatures in a representative capacity. Tricor contends that Citibanc improperly allowed Arnold to deposit the October 30 check to his account (1) in spite of the fact that it was made payable to Tricor and indorsed "for deposit only," and (2) over his signature which did not indicate a representative capacity.
Even assuming Citibanc could be liable for the alleged improper payment, the record shows that Tricor ratified the acts *Page 1347 
of Arnold in depositing the check to his own account. Section7-3-404 (2) states: "Any unauthorized signature may be ratified for all purposes of this article. Such ratification does not of itself affect any rights of the person ratifying against the actual signer."
Citibanc's dishonor of the November 8 check on November 17 caused an overdraft in Tricor's account. The president of Citibanc telephoned Charles Payne, the president of Tricor, and explained these transactions, including the diversion of the Great Southern Paper check. Payne made no demand on Citibanc for the alleged mishandling of the check until April of 1981. Instead, Payne caused Tricor to cover the overdraft and continue banking with Citibanc.
Payne set up an account on Tricor's books designated "Notes Receivable, Other," and entered the amount of the Great Southern Paper check. Arnold gave Tricor a $10,000 cashier's check on November 17 and this amount was entered on the notes receivable account. Arnold later repaid another $30,000. Tricor's financial statement for December 31, 1978, lists the account as reflecting an asset of $35,992.
In short, Tricor treated the October 30 diversion of the Great Southern Paper check as a loan to Arnold and thereby ratified the October 30 deposit of the Great Southern Paper check into Arnold's account. Under Uniform Commercial Code provisions similar to those at issue here, courts have held that ratification precluded findings of liability against defendant banks for mishandling checks. Thermo ContractingCorp. v. Bank of New Jersey, 69 N.J. 352, 354 A.2d 291 (1976);Fulka v. Florida Commercial Banks, Inc., 371 So.2d 521
(Fla.Dist.Ct.App. 1979); and Eutsler v. First National Bank,639 P.2d 1245 (Okla. 1982); but see Atlas Building Supply Co.v. First Independent Bank of Vancouver, 15 Wn. App. 367,550 P.2d 26 (1976).
The November 17 dishonor of Arnold's November 8 check presents a different question. Code 1975, § 7-4-302, bears the title "Payor bank's responsibility for late return of item," and reads in pertinent part:
 "In the absence of a valid defense such as breach of presentment warranty (subsection (1) of section 7-4-207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of:
 "(a) A demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline."
(Emphasis added.)
Section 7-4-104 (1)(h) defines "midnight deadline":
 "`Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later."
Section 7-4-301 contains further pertinent provisions:
 "(1) Where an authorized settlement for a demand item (other than a documentary draft) received by a payor bank otherwise than for immediate payment over the counter has been made before midnight of the banking day of receipt the payor bank may revoke the settlement and recover any payment if before it has made final payment (subsection (1) of section 7-4-213) and before its midnight deadline it:
"(a) Returns the item; or
 "(b) Sends written notice of dishonor or nonpayment if the item is held for protest or is otherwise unavailable for return.
 "(2) If a demand item is received by a payor bank for credit on its books it may return such item or send notice of dishonor *Page 1348 
and may revoke any credit given or recover the amount thereof withdrawn by its customer, if it acts within the time limit and in the manner specified in subsection (1).
"[(3) and (4) omitted.]"
Citibanc is a payor bank in this case because Arnold's November 8 check was drawn on his account at Citibanc. Code 1975, § 7-4-105 (b). It is also a depositary bank because it is the first bank to which the check was presented.
Under the provisions of § 7-4-301, Citibanc could have charged the November 8 deposit back against Tricor's account on November 9 (assuming the November 8 credit to Tricor's account to be provisional and not a final payment), but, because it did not do so until after that date, it arguably "is accountable for the amount of" the check "whether properly payable or not," under § 7-4-302. Citibanc's proper action would have been to give Arnold a provisional credit for the $80,000 check subject to withdrawal only when that check had been honored by the Jackson County Bank.
If Citibanc's charge back against Tricor's account in violation of the midnight deadline cannot constitute a conversion, the trial court should have granted judgment for Citibanc based on the statute of limitations.
Code 1975, § 7-3-419 states:
"(1) An instrument is converted when:
 "(a) A drawee to whom it is delivered for acceptance refuses to return it on demand; or
 "(b) Any person to whom it is delivered for payment refuses on demand either to pay or to return it; or
"(c) It is paid on a forged indorsement.
 "(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument."
The official comment to this section includes the following:
 "A negotiable instrument is the property of the holder. . . . This section adopts the generally recognized rule that a refusal to return it on demand is a conversion. . . . The action is not on the instrument, but in tort for its conversion.
 "The detention of an instrument voluntarily delivered is not wrongful unless and until there is a demand for its return. Demand for a return at a particular time may, however, be made at the time of delivery; or it may be implied under the circumstances or understood as a matter of custom."
The Code section and comments, speaking of the "detention" or "return" of an instrument, show that § 7-3-419 refers to conversion of the instrument itself, not of monetary proceeds paid on the instrument. Either when Citibanc posted Arnold's November 8 check to his account or when it let the midnight deadline expire without charging the amount of the check back against Tricor's account, it made final payment on the check. Code 1975, §§ 7-4-213, -212 (3), and -301. After it made final payment, Tricor's suit against it would not be for conversion of the instrument, but for conversion of the monetary proceeds of the instrument. Therefore, under these facts, an action for conversion cannot lie under § 7-3-419.
This Court has recently reaffirmed the position that an action will lie for conversion of money only if there is "earmarked money or specific money capable of identification."Lewis v. Fowler, 479 So.2d 725, 726 (Ala. 1985). The money that Tricor now alleges to have been converted was unidentifiable money in Tricor's checking account. We hold that, because the facts do not support a finding of conversion of the instrument itself, this suit for violation of the midnight deadline is an action for a statutory penalty and thus is barred under §6-2-39 (a)(3).
This holding is consonant with results reached by courts in similar cases cited by the parties or disclosed in our research. In New Ulm State Bank v. Brown, *Page 1349 558 S.W.2d 20 (Tex.Civ.App. 1977), the court analyzed a bank's failure to return drafts as both a conversion and a violation of the midnight deadline. The evidence showed that the payor bank deliberately refrained from either paying or returning a series of drafts to the presenting bank. This was clearly a conversion within the meaning of U.C.C. § 3-419. The court referred to the above-quoted official comments to § 3-419 and then held:
 "The drafts in question, being demand instruments, were due and actionable upon presentation. The collection letter to New Ulm State Bank specifically instructed the bank not to hold the item after maturity or for the convenience of the payer. In view of the bank's own admission that the drafts were held after demand for the purpose of assisting its customer, the trial court could have concluded, as a matter of law, that a demand was made for the return of each draft at the time of delivery and that there was an intentional failure by New Ulm State Bank to return the instrument. Thus the trial court's judgment may be upheld upon the theory of conversion under Tex. Bus. Comm. Code Ann. § 3.419.
 "The trial court's judgment may also be sustained upon the theory that New Ulm State Bank became liable as a `payor' bank for the late return of the drafts under the provisions of Tex.Bus. Comm. Code Ann. § 4.302. . . ."
558 S.W.2d at 24 (citations omitted). The court in New UlmState Bank was not faced with a question of the nature of the remedy under § 4-302 or an issue of conflicting statutes of limitations.
In Bank of America Nat. T S. Ass'n v. Security Pac. Nat.Bank, 23 Cal.App.3d 638, 100 Cal.Rptr. 438 (1972), the courtwas faced with conflicting statutes of limitations, but the case did not turn on the question before us. Under California law, either an action for liability created by statute or an action for conversion would have a three-year statute of limitations. The Court held that the action, brought more than three years but less than four years after the cause of action arose, could not be held timely as an action on a written contract. The court, in dicta, remarked, "Assuming the complaint may be construed to allege a conversion, the applicable statute of limitations would be the three-year statute. . . ." Id., 23 Cal.App.3d at 642, 100 Cal.Rptr. at 441. The court did note, however, that "section 4302 creates a liability independent of negligence (see Com. Code, 4103, subd. (5)) or conversion (Com. Code, § 3419) for the amount of the item involved." Id., 23 Cal.App.3d at 643, 100 Cal.Rptr. at 442. The facts in Bank of America were more similar to those inNew Ulm State Bank than to those in the instant case, with the variation that the California case involved the application of the midnight deadline to a second presentment of drafts to a payor bank.
The court in Union Bank of Benton, Arkansas v. First NationalBank in Mount Pleasant, Texas, 677 F.2d 1074, 1078 (5th Cir. 1982), made a passing reference to the payor bank's violation of its statutory duty "by wrongfully retaining the twenty-four checks." Again, the facts involved a failure to return drafts upon demand and did not raise the issues found in this case.
A treatise on the U.C.C. remarks on the question before us:
 "[W]here the midnight deadline is missed, the recipient's suit is no longer `on the instrument,' but will be either a suit in conversion under UCC section 3-419, subject to whatever statute of limitations is applicable to such suits, or it will be a suit under UCC section 4-302 for breach of statutory duty. The statute of limitations for such suits can differ from that applicable to suits on the instrument and also from that applicable to conversion actions."
6 Hawkland, Leary, and Alderman, Uniform Commercial CodeSeries, § 4-302.07, p. 105 (1984). We do not find this statement, nor the authorities cited in support of it (principally, the cases we have discussed above), to be in conflict with our *Page 1350 
holding that the facts of this case will not support an action for conversion. See also Annot., Construction and Effect ofU.C.C. §§ 4-301 and 4-302 Making Payor Bank Accountable forFailure to Act Promptly on Item Presented for Payment, 22 A.L.R.4th 10 (1983).
Many courts have held that a violation of the midnight deadline imposes liability for the face amount of the check regardless of actual damages. Rock Island Auction Sales v.Empire Packing Co., 32 Ill.2d 269, 204 N.E.2d 721 (1965);Farmers Cooperative Livestock Market v. Second National Bank ofLondon, 427 S.W.2d 247 (Ky. 1968); National City Bank of Romev. Motor Contract Co. of Rome, 119 Ga. App. 208, 166 S.E.2d 742
(1969); Central Bank Trust Co. v. First Northwest Bank,332 F. Supp. 1166 (E.D.Mo. 1971), aff'd, 458 F.2d 511 (8th Cir. 1972); Annot., supra, 22 A.L.R.4th at 24-29. See also CentralBank of Alabama v. Peoples National Bank of Huntsville,401 So.2d 14 (Ala. 1981). Such a rule of strict liability is all the more reason to hold that a suit for violation of the midnight deadline, as such, comes under the statute of limitations for a statutory penalty, not that for conversion.
Because we reverse on the appeal, it is not necessary to address the issue of inadequate damages presented on the cross appeal. Because of our decision in regard to the appeal, the cross-appeal is dismissed as moot.
For the reasons stated above, the judgment of the trial court is reversed and the cause remanded for entry of judgment consistent with this opinion.
83-956, REVERSED AND REMANDED.
83-992, DISMISSED AS MOOT.
TORBERT, C.J., and MADDOX, JONES, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
[1] We recognize that § 6-2-39, Code 1975, has been repealed and the actions governed by its one-year provision transferred to §6-2-38, the two-year statute. See Act 85-39, Ala. Acts, Second Spec. Session 1984-85. The effective date of that change was January 9, 1985, long after the events of the present case.