**In re CASTLETONS, INC., Debtor.**

**Mary Ellen SLOAN, as Trustee for the Debtor, Castletons, Inc., Appellant,**

**v.**

**ZIONS FIRST NATIONAL BANK, N.A., Appellee.**

**No. 91–C–0462–S.**

United States District Court, D. Utah, C.D.

Feb. 28, 1992.

Steven H. Gunn, Salt Lake City, UT, for appellant.

Jeffrey L. Shields, Callister, Duncan & Nebeker, Salt Lake City, UT, for appellee.

## MEMORANDUM DECISION AND ORDER

SAM, District Judge.

This matter is before the court on appellant Mary Ellen Sloan's ("Trustee") appeal from the bankruptcy court's ruling of summary judgment of April 5, 1990 in favor of appellee Zions First National Bank ("Zions"), and on the Trustee's appeal of the bankruptcy court's Order and Judgment entered at the conclusion of the trial.

### FACTS

Castletons, Inc. ("Castletons") was a clothing retailer operating stores in Davis, Salt Lake, and Utah Counties in the State of Utah. Castletons filed a petition under Chapter 11 in the United States Bankruptcy Court for the District of Utah on May 15, 1987.

Several years prior to filing under Chapter 11, Castletons had obtained a line of credit from Zions. A prior line of credit was renewed on January 30, 1986, by Castletons' signing a new note in the principal sum of $3,600,000. Zion's line of credit note of January 30, 1986 was secured by a security interest in all of Castletons' inventory and accounts receivable. On May 30, 1986, Castletons renewed the earlier note by signing a new line of credit note in the principal sum of $3,600,000 which was due "on demand or if no demand then April 30, 1987." As of February 25, 1987, the line of credit remained fully drawn, and as a result, Zions was not making any further advances. In addition to the line of credit note, on October 31, 1986, Castletons executed a note in the principal sum of $100,-000 in renewal of an earlier note. It also executed a new note evidencing an additional loan of $500,000 on November 20, 1986. An outstanding balance of $250,000 owing on the November 20, 1986 note was renewed with a new note dated February 26, 1987. The notes were secured by a lien

on Castletons' inventory, accounts receivable, contract rights and personal property "now or hereafter" in Zions' possession.

In early 1987, Castletons began closing three of its stores, and undertook the liquidation of a large portion of its inventory. Castletons made substantial payments against the three notes as a result of the liquidation. Prior to filing under Chapter 11, it paid $991,668.75 against the line of credit note and $253,014 against the $500,-000 note. During this period of liquidation, Castletons continued to receive new inventory in its other stores and to generate new accounts receivable. During this period, Castletons generated new accounts receivable in the face amount of $911,868.20, and obtained new inventory having a retail value of $3,219,916 which became additional collateral for payment of Zions' loans.

In May, 1987, Zions froze, then offset against, Castletons' checking accounts held at Zions, and thereby obtained $352,494.73.

On April 30, 1987, Castletons drew a check in the sum of $214,303.64, payable to the Utah State Tax Commission, to pay Castletons' quarterly tax obligation. On May 5, 1987, the check was deposited in the Tax Commission's account at First Security Bank. When the check was presented to Zions the following day, it refused to honor it and returned the check to First Security on May 8, after the expiration of the midnight deadline imposed under § 70A–4–302 of Utah's version of the Uniform Commercial Code. The return was also untimely under the rules of the Salt Lake Clearinghouse of which Zions is a member.

As a result of Castletons' payments on Zions' notes and as a further result of the setoffs against Castletons' accounts, Zions was able to reduce Castletons' debt from $3,979,127 on February 14, 1987, to $3,054,-234.64 on the date of the petition.

On July 2, 1987, Zions and Castletons entered into a Stipulation and Agreement Concerning Use of Cash Collateral (the "Stipulation"). Under the terms of the Stipulation, which was approved by the bankruptcy court, Castletons came under the control of a liquidator, Buxbaum, Ginsberg & Associates ("Buxbaum"). Under the Stipulation, all proceeds of sale of Castletons' inventory were to be deposited into a "control account" controlled by Zions. Zions agreed to authorize payment of taxes from that account for the period from June 28, 1987 to September 19, 1987.

In July, 1987, Castletons prepared a check for $101,399.07 drawn on the control account payable to the Utah State Tax Commission for the quarter beginning April 1, 1987. Zions refused to sign the check when presented for its co-signature.

Under Buxbaum's direction the liquidation proceeded with all but $177,115.91 of the loans from Zions being paid off as of August 9, 1990.

Castletons' bankruptcy case was converted to a Chapter 7 liquidation by an order of the bankruptcy court dated September 7, 1988. The Trustee commenced this adversary proceeding on October 5, 1989.

## DISCUSSION

1. Whether the Bankruptcy Court erred in applying the one-year statute of limitations to the Trustee's late return claim?

On January 29, 1990, the Trustee sought summary judgment against Zions based upon Zions' late return of the Tax Commission check. The late return claim arises under Utah Code Ann. § 70A–4–302,[1]

---

**1.** 70A–4–302. In the absence of a valid defense such as breach of a presentment warranty (Subsection (1) of Section 70A–4–207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of

    (a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or

    (b) any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents.

which provides that a payor bank is liable to pay a check which it retains beyond its midnight deadline.

■ The bankruptcy court concluded that the liability imposed under § 70A–4–302 was a penalty within the meaning of § 78–12–29(2) [2] and that, as a result, the late return claim was time-barred. The issue the Trustee raises is whether the bankruptcy court's application of the one year statute of limitations (§ 78–12–29(2)) was in error. The court reviews this issue *de novo Morgan v. Mobil Oil Corp.*, 726 F.2d 1474 (10th Cir.1984).

■ The Trustee contends the bankruptcy court erred in applying the one year statute of limitation to her late return claim. She urges that the lower court's conclusion, that the tardy return claim was governed by the one year statute of limitations, was based on the view that the claim arose under a penal statute, whereas in reality the claim arises under a statute which redresses a private injury, and, therefore, falls under the three year statute of limitations found in Utah Code Ann. § 78–12–26(4).

Zions responds that the bankruptcy court correctly dismissed the Trustee's late return claim because it was filed after the expiration of the applicable statute of limitations. Zions urges that Utah Code Ann. § 70A–4–302 imposes strict liability on a payor bank that fails to return a check by the midnight deadline and that the strict liability imposed is a penalty within the meaning of Utah Code Ann. § 78–12–29(2).

The threshold issue is whether the liability imposed by § 70A–4–302 imposes a "penalty" for purposes of § 78–12–29(2). "A penalty is a sum of money which the law exacts the payment of by way of punishment for doing some act which is prohibited, or omitting to do some act which is required to be done." *State v. Franklin*, 63 Utah 442, 226 P. 674, 676 (1924). Section 70A–4–302 clearly imposes liability on the payor bank for a late check "whether

properly payable or not." Accordingly, the court is not persuaded by the Trustee's argument that § 70A–4–302 does not impose a fine but is simply intended to indemnify a payee who has been damaged by the payor bank's tardy return of a check. The court is of the opinion that Utah Code Ann. § 70A–4–302 imposes a penalty or forfeiture and is, therefore, governed by the statute of limitations. *Citibanc of Alabama/Fultondale, v. Tricor Energies, Inc.*, 493 So.2d 1344; 1 U.C.C.Rep.2d 1571, 1580 (Alabama 1986) ("... the rule of strict liability [of U.C.C. § 4–302] is all the more reason to hold that a suit for violation of the midnight deadline, *as such*, comes under the statute of limitations for a statutory penalty, not that for conversion.") (emphasis original). *See also Carlson v. McCoy*, 566 P.2d 1073, 1075 (Colo.1977) ("statutes which impose penalties in excess of actual damages are penal for the purposes of the statute of limitations"). Moreover, the one year limitation period of Utah Code Ann. § 78–12–29(2) is consistent with the public policy of Utah Code Ann. § 70A–4–302 to encourage the prompt settlement of checks. Therefore, the court concludes that the bankruptcy court correctly applied the one-year statute of limitations to the Trustee's late return claim.

2. Whether the Bankruptcy Court's preference rulings under 11 U.S.C. § 547 were erroneous?

Pursuant to 11 U.S.C. § 547, the Trustee sought to set aside, as preferential transfers, payments made to Zions and attachments of Zions' liens occurring within ninety days of Castletons' bankruptcy petition. At the conclusion of the Trustee's case, the court granted Zions' motion to dismiss as to the cash payments which the debtor made to Zions, but denied the motion as to inventory and accounts receivable to which Zions' security interest attached during the preference period. However, at the close of trial, the court ruled that Zions had

---

**2.** 78–12–29(2). Within one year:

. . . . .

(2) An action upon a statute for a penalty or forfeiture where the action is given to an indi-

vidual, or to an individual and the state, except when the statute imposing it prescribed a different limitation.

. . . . .

proved the elements of its affirmative defense under 11 U.S.C. § 547(c)(5) relating to the new collateral. The bankruptcy court, therefore, dismissed the remainder of the Trustee's preference claim.

■ The Trustee first asserts that the bankruptcy court contradicted itself on the issue of whether she met her initial burden under 11 U.S.C. § 547(b)(1) through (4)(A). On October 12, 1990, the bankruptcy court ruled on Zions' motion to dismiss, finding that the trustee had proven all elements of § 547(b)(1), (2), (3), and (4)(A). Referring to cash payments, the court stated "There is no question that 547(b)(1), (2) and (4)(A) have been proven. Moreover, the only evidence presented is that the debtor was insolvent when the transfers were made, thereby satisfying 547(b)(3)." (Transcript of Oct. 12, 1990, p. 7.) However, in a subsequent hearing on November 21, 1990, the bankruptcy court summarized its previously ruling by stating:

> With respect to the 547(b) issue, the Court ruled at the close of Plaintiff's case that with respect to cash payments to Zions, the Trustee had presented no evidence and had not met its burden on any of the issues of 547(b).

(Transcript of Nov. 21, 1990, p. 8.)

Although it does appear that there may be some inconsistency in the rulings, this court concludes that dismissal of the payment portion of the Third Cause of Action was based on the Trustee's failure to satisfy her burden of producing evidence on the fifth element of a preference claim—that the transfer diminished the Debtor's estate to the detriment of unsecured creditors. The apparent inconsistency in the rulings as to the first four elements of the preference claim is, therefore, immaterial to the bankruptcy court's dismissal of the cash payment claim and consequently does not establish any grounds for reversal. *Nulf v. International Paper Co.*, 656 F.2d 553, 561 (10th Cir.1981).

The Trustee also claims that the bankruptcy court was inconsistent on whether she met her burden of proof of showing the attachment of new liens was preferential under § 547(b)(5). She contends that the Second Order of Dismissal and the Final Judgment are internally inconsistent. The court does not agree. The purported inconsistencies are the bankruptcy court's application of two different burdens of proof to the evidence at different stages of the case. The two rulings conclude that, although the Trustee met her initial burden of producing evidence, thus establishing a *prima facie* case as to the lien attachment portion of her preference claim, she failed to meet her ultimate burden of persuasion on that issue.

The Trustee next asserts that the bankruptcy court erred in dismissing her claims that cash payments to Zions were preferential under § 547(b).

■ The Trustee may avoid a transfer of the debtor's property "that enables such creditor to receive more than such creditor would receive if (A) the case were a case under Chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title." 11 U.S.C. 547(b)(5). There was no evidence presented by the Trustee that payments to Zions came from any source but personal property already subject to Zions' pre-existing, pre-preference period liens. The bankruptcy court determined that payments to Zions were from proceeds of Zions' collateral. October 12 Transcript, p. 7–8; October 22 Transcript, p. 6; November 21 Transcript, p. 4–5. Based on this finding, the bankruptcy court ruled that the Trustee had failed to meet her *prima facie* case under 11 U.S.C. § 547(b)(5). A dismissal under Rule 41(b) must be affirmed unless the appellant shows that the trial court's findings are clearly erroneous or contrary to law. *Kadala v. Amoco Oil Co.*, 820 F.2d 1355 (4th Cir.1987). This court cannot find that the bankruptcy court's finding was clearly erroneous. Because of Zions' pre-existing, pre-preference period lien on all accounts

receivable, inventory and proceeds, Zions did not receive more from the challenged payments than it would have in a Chapter 7 liquidation.[3] The court is not persuaded by the Trustee's contention that the bankruptcy court was "patently wrong in its assertion that a preference claim must be denied if a creditor is fully secured on the petition date." Appellant's Brief, p. 20. The hypothetical distribution required under § 547(b)(5) is determined as of the petition date, not the date of actual transfer. *In re Tenna Corporation*, 801 F.2d 819 (6th Cir. 1986); *In re Independent Clearing House Co.*, 41 B.R. 985, 1013 (Bankr.D.Utah 1984). Because all prior payments to Zions were from proceeds of its own collateral, and all proceeds from the hypothetical liquidation under § 547(b)(5) would go to Zions because of its perfected, pre-preference period liens, no payments to Zions diminished the bankruptcy estate.

■ The Trustee next contends that the court erred in denying her preference claim based on the attachment of liens on new inventory and accounts. She asserts that in the absence of a determination of the value of Zions' collateral, the court could not rule against her under § 547(b)(5). She concludes that "if the attachment of liens were avoided as preferential, Zions would have received less than 100% of its claim." Appellant's Brief, pp. 26–27. She further asserts that in the absence of a determination of value of Zions' collateral, the Bankruptcy Court could not rule on the issue of improvement in position under § 547(c)(5). On this point the Trustee urges that the bankruptcy court could not apply the two-point improvement test of § 547(c)(5) without calculating the value of Zions' collateral at various points in time. She urges the court to remand the preference claims to the Bankruptcy court for application of the two point improvement in position test of 547(c)(5).

3. As explained by the bankruptcy court "The fact that one creditor is paid in full from a source to which the [sic] other creditors have no right to resort, does not entitle other creditors to

■ The court disagrees with both of the Trustee's contentions. This court is of the opinion that the bankruptcy court correctly articulated and applied the law on this issue. In its Second Order of Dismissal, the bankruptcy court stated:

> Next, the Trustee also wants to avoid the liens that attach to inventory and accounts receivable during the 90 day period.
>
> In this case, Zions had a perfected security interest in inventory and accounts receivable and proceeds. Because under 547(e)(3) a transfer is not made until the debtor has acquired rights in the property transferred, Zions' lien on these items did not attach until the Debtor received them.
>
> Hypothetically, if the creditor is undersecured 90 days prior to filing, receipt of new collateral by the debtor will create a preference under 547(b) because during the preference period the creditor would be reducing its unsecured balance.
>
> 547(c)(5) addresses this and sets forth a two part test. The Court is to look at the creditor's secured status 90 days prior to the petition date and the petition date. In addition, the Court is to determine whether the reduction in the creditor's unsecured status is prejudicial to other creditors.

October 12, 1990 Transcript, p. 8. In its ruling of October 22, 1990, the bankruptcy court further noted:

> Under Section 547(c)(5), however, it is imperative that the improvement of position be to the prejudice of unsecured creditors.... Generally, there must be some diminution in the estate that is available for distribution to unsecured creditors....
>
> Moreover, increases in the value of the collateral based on profit or financing by the secured creditor will not be recoverable as a preference. See [Collier on

complain or the trustee to recover the amount so secured." Oct. 22 Transcript, p. 6, quoting *Deel Rent–A–Car, Inc. v. Levine* 721 F.2d 750,

Bankruptcy § 547.13 [4]] at 547–63. October 22, 1990 Transcript, p. 5.

Applying this law to the facts, the bankruptcy court found as follows:

The evidence in this case indicates that during the 90–day period the debtor was engaged in selling inventory and turning it into accounts receivable and cash. The debtor was also engaged in turning accounts receivable into cash and then using cash to buy inventory and pay ordinary business expenses. Zions had a properly perfected security interest in all of the debtor's accounts receivable and inventory and proceeds....

Accordingly, the fact that Zions may have improved its position during the preference period is irrelevant because unsecured creditors would not have had a claim to the collateral and, therefore, the estate was not diminished.

October 22, 1990 Transcript, p. 6.

The Trustee has presented no persuasive authority from which this court can conclude, in light of Zions' properly perfected security interest and the fact that increases in the collateral were based on financing by Zions, why the attachment of liens to new inventory and accounts was to the prejudice of other creditors.

Accordingly, the court concludes that the bankruptcy court's preference rulings are correct.

3. Whether the Bankruptcy Court erred in dismissing the Trustee's claim for equitable subordination?

■ In her amended eleventh claim for relief, the Trustee alleged that Zions' claims against Castletons should be equitably subordinated pursuant to 11 U.S.C. § 510(c). Appellant contends that the bankruptcy court erred in dismissing the trustee's claim for equitable subordination of Zion's claim to the claims of other creditors.

Zions contends that the bankruptcy court correctly dismissed the amended eleventh cause of action because Zions did not act inequitably in refusing to pay the second quarter taxes; and because Zions' actions neither damaged other creditors nor gave Zions an unfair advantage. For the reasons set forth below, the court agrees.

11 U.S.C. § 510(c) allows the subordination of one claim to another "under principles of equitable subordination." Federal courts have adopted a three-part test for equitable subordination: (1) The claimant must have engaged in some type of inequitable conduct such as the exercise of control over the debtor; (2) The misconduct must have resulted in injury to the creditors of the debtor or conferred an unfair advantage on the claimant; and (3) Equitable subordination of the claims must not be inconsistent with the provisions of the Bankruptcy Code. In re Mobile Steel Co., 563 F.2d 692, 700 (5th Cir.1977). The party seeking subordination must demonstrate each of these three elements by a preponderance of evidence. Matters of Pinetree Partners, Ltd., 87 B.R. 481, 488 (Bankr. N.D.Ohio 1988).

The Trustee urges that she established each of the three elements for equitable subordination. Specifically, the Trustee asserts that Zions used its control to take Castletons' sales tax collection and apply it to Zions' debt. The court disagrees. The bankruptcy court specifically found that Zions did not exercise control over the debtor until after the court's approval of the Stipulation. The actions upon which the Trustee based her equitable subordination claim were authorized by the Stipulation and the bankruptcy court. The taxes, which Zions agreed to pay under the Stipulation, were expressly limited to those that accrued "from June 1987 to September 17, 1981." Zions' unwillingness to pay taxes that had accrued prior to June 28, 1987, therefore did not violate the Stipulation.

---

756 (11th Cir.1983) (quoting *Walker v. Wilkinson,* 296 F. 850, 852 (5th Cir.1924)).

**4.** Citing *Leake v. United States (In re Carper),* 63 B.R. 582, 15 C.B.C.2d 496 (Bankr.W.D.Va.1986) (despite conceded improvement in position by secured party in 90–day period preceding bankruptcy, there was no prejudice to other unsecured creditors where all assets that led to the improved position were also secured by the same creditor).

The actions were not inequitable conduct which would justify subordination of Zions' claim. *Clark Pipe and Supply Co., Inc.,* 893 F.2d 693 (5th Cir.1990). Moreover, the Trustee has failed to establish that Zions's actions gave it an unfair advantage or damaged other creditors. Zions' actions also were consistent with provisions of the Bankruptcy Code. The bankruptcy court therefore properly dismissed the claim.

## CONCLUSION

The judgment of the United States Bankruptcy Court is affirmed.